NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2258
_____

UNITED STATES OF AMERICA

v.

DION OLIVER,
AKA Ollie,
AKA Sadiqwakil Aleem,
AKA Sadizwaleez Aleem,
AKA Fine Wine,
AKA Bop,
AKA Bopper,
                Appellant
_____

On Appeal from the United States District Court
For the District of Delaware
(D.C. No. 1-18-cr-00075-004)
District Judge: Honorable Joshua D. Wolson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 25, 2024

Before: JORDAN, McKEE, and AMBRO, *Circuit Judges*

(Filed: June 27, 2024)
_____

OPINION*
_____

---

   * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Dion Oliver appeals his conviction and the District Court's denial of his motion for a new trial. We will affirm.

**I.   BACKGROUND**

In May and June 2017, Oliver, along with several co-conspirators, stalked and tried to kill Markevis Stanford, with whom the group had an ongoing feud. In pursuit of Stanford, they also kidnapped and killed his then-girlfriend, Keyonna Perkins.

Eventually, a grand jury indicted Oliver and his co-conspirators on five counts: (1) conspiracy to stalk, in violation of 18 U.S.C. §§ 2261A(2)(A) and 371; (2) stalking, in violation of 18 U.S.C. §§ 2261A(2)(A) and 2; (3) conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(a)(1) and (c); (4) kidnapping, in violation of 18 U.S.C. §§ 1201(a)(1) and 2; and (5) using and/or carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.

The government's evidence at trial included the following: testimony from a co-conspirator about Oliver's involvement in the crimes, [cell phone location data placing Oliver's phone near the site of acts related to the crimes at the relevant times, security camera footage, and DNA evidence.

Prior to instructing the jury, the District Court held a charge conference. The parties jointly proposed an instruction on co-conspirator liability, patterned on our Court's Model Jury Instruction § 7.03. The parties then agreed to the language of the final set of jury instructions, including the language for the co-conspirator instruction, which the Court took nearly verbatim from the parties' proposed instruction.

The jury instructions repeatedly emphasized that conspiracy to commit stalking and conspiracy to commit kidnapping were two separate conspiracies. While the instructions as to the particular elements of conspiracy addressed both conspiracies, the District Court distinguished them throughout, such as by providing separate lists of facts that could satisfy the overt-acts element for each.

After instructing the jury on the elements of each offense, the Court gave the agreed-upon instruction on co-conspirator liability, which explained that the jury could find Oliver guilty of Count Two (stalking), Count Four (kidnapping), or Count Five (using and/or carrying a firearm):

> based on the legal rule that each member of a conspiracy is responsible for crimes and other acts committed … by the other members[,] as long as those crimes and acts were committed to help further or achieve the objective of the conspiracy and were reasonably foreseeable to the defendant as a necessary or natural consequence of the agreement.

(App. at 218.) The Court emphasized that the jury must consider the elements of co-conspirator liability "for each relevant offense" and that the first element it would need to consider was whether "Oliver was a member of the conspiracy charged[.]" (App. at 219.)

During its deliberations, the jury wrote the Court a note indicating that it was "deadlock[ed]" and expressing concern with the idea that, "if [Oliver is] convicted of any charge [he is] guilty of all charges. We are not okay that he is automatically guilty of all charges." (App. at 15.) The Court brought the parties together to discuss how to address the jury's note, but, before they could, the jury reached a verdict. Before accepting the jury's verdict, the Court confirmed with the jury that any questions or issues that prompted the note had been resolved. The jury found Oliver guilty of conspiracy to

3

commit stalking, stalking, conspiracy to commit kidnapping, and kidnapping, but not guilty of using and/or carrying a firearm in relation to a crime of violence.

Oliver filed a motion for a new trial, which the District Court denied. Oliver then timely appealed his conviction and the denial of his motion for a new trial.

## II. DISCUSSION[1]

Oliver raises two issues on appeal. First, he challenges the District Court's jury instruction on co-conspirator liability, contending it constituted plain error that seriously affected the integrity of the verdict. Second, based on the same plain-error argument, he argues that the Court erred by denying his motion for a new trial.

Because Oliver did not object to the District Court's co-conspirator liability instruction at trial (indeed, he joined in proposing it to the Court), his conviction must stand unless he can establish plain error. *United States v. Savage*, 85 F.4th 102, 137 (3d Cir. 2023). "To do so, he must prove that: (1) the Court erred; (2) the error was obvious under the law at the time of review; and (3) the error affected substantial rights, that is, the error affected the outcome of the proceedings." *Id.* "If all three elements are established, we may, but need not, exercise our discretion to award relief." *Id.* "That discretion should be exercised only in cases where the defendant is 'actually innocent' or

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Oliver never objected to the jury instruction at issue, so we review for plain error. *United States v. Greenspan*, 923 F.3d 138, 147 (3d Cir. 2019). We review the District Court's denial of his Rule 33 motion for a new trial for abuse of discretion. *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008).

4

the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736-37 (1993)).

Co-conspirator liability, also known as *Pinkerton* liability, allows "the government to prove the guilt of one defendant through the acts of another committed within the scope of and in furtherance of a conspiracy of which the defendant was a member, provided the acts are reasonably foreseeable as a necessary or natural consequence of the conspiracy." *United States v. Lopez*, 271 F.3d 472, 480 (3d Cir. 2001) (citing *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946)). That means a defendant "may be held responsible for the substantive crimes committed by a co-conspirator in furtherance of the conspiracy, even if the conspirator neither participates in the crimes nor has any knowledge of them." *United States v. Gonzalez*, 918 F.2d 1129, 1135 (3d Cir. 1990) (citing *Pinkerton*, 328 U.S. at 646-47).

Oliver claims that the District Court's instruction to the jury on the legal rule of co-conspirator liability failed to distinguish between the two separate conspiracies and erroneously permitting the jury to find Oliver guilty of all charges if they found he joined either conspiracy. He is mistaken.

First, the challenged portion of the co-conspirator liability instruction matches our Model Criminal Jury Instructions § 7.03 ("Responsibility For Substantive Offenses Committed By Co-Conspirators (*Pinkerton* Liability)"). "We have a hard time concluding that the use of our own model jury instruction can constitute error, and nothing that [Oliver] says removes our doubt that use of such an instruction can constitute error." *United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010). Moreover, we have

5

said as much in a similar context: "The District Court's instruction on when conspirators can be held liable for the actions of their co-conspirators was not plain error as it followed this Court's model jury instructions and precedent." *United States v. Gonzalez*, 905 F.3d 165, 190 (3d Cir. 2018). Oliver argues that this case is different because the District Court "fundamentally altered the model instruction" by "fail[ing] to distinguish between the conspiracies[.]" (Opening Br. at 25.) He contends that the Court's use of "the conspiracy" in the instructions refers to "only one conspiracy," and thus, "[i]n combining both conspiracies and comingling the counts subject to vicarious liability, the charge[] failed to require that the jury find Oliver was a member of the kidnapping conspiracy *before* finding that Oliver was vicariously guilty of kidnapping." (Opening Br. at 23.) His reading of the instructions is too cramped.

Jury instructions "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal quotation marks omitted). Thus, "[w]hen reviewing jury instructions, we look at the instructions as a whole, not piecemeal." *United States v. Greenspan*, 923 F.3d 138, 147 (3d Cir. 2019). Here, the Court's instructions emphasized that the counts were separate: "Count 1, conspiracy to stalk, and Count 3, conspiracy to kidnap, are separate crimes. You must consider the four elements I've just described for Count 1 and then separately for Count 3." (App. at 201.) In their full context, the Court's instructions sufficiently distinguished between the two conspiracies, and so, when the jury considered whether Oliver was a "member of the conspiracy charged[,]"

6

(App. at 219), it was clear that meant the particular conspiracy underlying the relevant offense. The instructions were therefore not erroneous, let alone plainly erroneous.[2]

Oliver moved for a new trial based on the same error in the vicarious liability instruction that we have just addressed. For the same reasons we have noted, the District Court did not abuse its discretion in denying that motion. *See United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008).

## III. CONCLUSION

Accordingly, we will affirm the judgment of conviction and the denial of his motion for a new trial.

---

[2] Oliver also argues that the jury's note indicates that it was confused and that the verdict was a product of that confusion. First, we "cannot speculate as to the content of the jury's deliberations[,]" *United States v. Russell*, 134 F.3d 171, 177 (3d Cir. 1998), and we assume the jury understood and followed the instructions it was given. *O'Brien v. Middle East Forum*, 57 F.4th 110, 122 (3d Cir. 2023). Additionally, before accepting the jury's verdict, the Court ensured that the jury had resolved whatever differences, questions, or issues it had to reach its unanimous verdict.